**CITIZENS AGAINST RAILS–TO–TRAILS, an unincorporated association, et al., Petitioners,**

v.

**SURFACE TRANSPORTATION BOARD and United States of America, Respondents.**

**Union Pacific Railroad Company, et al., Intervenors.**

**No. 00–1387.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 2001.

Decided Oct. 26, 2001.

James R. Baarda argued the cause for petitioners. With him on the briefs was Nels J. Ackerson.

Evelyn G. Kitay, Attorney, Surface Transportation Board, argued the cause for respondents. With her on the brief were Ellen D. Hanson, Deputy General Counsel, and David J. Lazerwitz, Attorney, U.S. Department of Justice.

Curt A. Fransen, Deputy Attorney General, State of Idaho, and Howard A. Funke argued the cause for intervenors. With them on the joint brief were Richard A. Allen, Andrea Ferster, Allan G. Lance, Attorney General, State of Idaho, Clive J. Strong, Division Chief, J. Michael Hemmer, Carolyn F. Corwin, James V. Dolan and Lawrence E. Wzorek. Charles H. Montange entered an appearance.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

A coalition of Idaho land owners denominated Citizens Against Rails-to-Trails ("CART") petition for review of the decision of the Surface Transportation Board in *Union Pacific Railroad Company— Abandonment—Wallace Branch, ID*, STB Docket No. AB–33 (June 26, 2000). In that decision the Board authorized Union Pacific to salvage 71.5 miles of its Wallace Branch rail line in Idaho, subject to four environmental conditions, and also authorized the right-of-way to be used as a trail pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) (2000) ("Trails Act"). CART challenges only the authorization of interim trail use.[1] It contends

---

1. Because CART is challenging only the Board's issuance of a certificate of interim trail use, the court, for reasons discussed below, has no occasion to address CART's con-

that the Board was required to assess the environmental impacts of trail use and erred in not disallowing trail use because the right-of-way is contaminated. The Board determined that the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4343 (1982), does not apply to the Trails Act, and that the Trails Act does not otherwise require an environmental assessment prior to issuance of a certificate for interim trail use. Because CART fails to show that these determinations were contrary to law or unreasonable, we deny the petition.

## I.

This case is before the court following the Surface Transportation Board's decision on remand from this court in *State of Idaho By and Through Idaho Pub. Utilities Comm'n v. I.C.C.*, 35 F.3d 585, 599 (D.C.Cir.1994). In that case, this court affirmed the Interstate Commerce Commission's decision to permit immediate discontinuance of rail operations on the Wallace Branch rail line, but remanded the Commission's conditional authorization of salvage. *Id.* at 599. After further proceedings, the Surface Transportation Board, as successor to the Commission,[2] through its Section of Environmental Analysis, issued for public review and comment a draft supplemental environmental assessment. Upon review of the Section's

final assessment, the Board concluded that if salvage is conducted according to the plans worked out by the railroad and other federal agencies, and if four new environmental mitigation conditions were implemented, then the railroad's salvage proposal would not have significant adverse environmental impacts.

The Board also issued a certificate of interim trail use ("CITU") permitting interim trail use and rail banking of the right-of-way because the State of Idaho and the Coeur d'Alene Tribe had submitted the requisite statement of willingness to assume full responsibility for the property and the railroad had indicated its willingness to negotiate with them. The Board rejected CART's argument that the issuance of a Trails Act authorization required the preparation of environmental documentation under NEPA. The Board took the position that questions relating to how and whether the right-of-way should be used as a trail were not questions for the Board to decide. Viewing its role under the Trails Act as ministerial, the Board concluded that issuance of a CITU is not a federal action under NEPA. The Board further observed that the environmental implications of trail use on the right-of-way had been thoroughly addressed in the detailed studies performed in connection with civil proceedings that led to a consent decree in 1999.[3]

---

tentions regarding the environmental conditions attached to the Board's authorization of abandonment of the Wallace Line.

**2.** *See* I.C.C. Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995). Hereinafter, we generally refer to the Surface Transportation Board ("the Board").

**3.** In 1991, the Coeur d'Alene Tribe sued Union Pacific pursuant to § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607 (1995) ("CERCLA"), for damages as a result

of injuries to natural resources in areas that include the property at issue in the instant case. A final Consent Decree, lodged at the end of 1999, was approved the following summer. *See United States & State of Idaho v. Union Pacific*, No. CV 99–0606–N–EJL, and *Coeur d'Alene Tribe v. Union Pacific*, No. CV 91–0342–N–EJL (D. Idaho Aug. 25, 2000). The Consent Decree obligates Union Pacific to remediate all environmental damage under oversight by the United States, the State of Idaho, and the Coeur d'Alene Tribe. Union Pacific also remains liable for cleanup if new information arises indicating that the re-

## II.

■ CART contends that the Trails Act requires the Board to implement that Act in a manner to effect its public recreational purposes.[4] Consequently, in CART's view, the Board's refusal to consider any environmental, contamination, or human hazard facts relating to the implementation and consequences of trail use, was contrary to NEPA requirements and was arbitrary and capricious. Because, CART continues, the requirements and policies of the Trails Act mandate that a CITU permit a recreational trail only if the purposes of the Trails Act, set forth at 16 U.S.C. § 1241 (2000), are satisfied, the CITU should be revoked, and the rail line declared abandoned, in view of record evidence that the contamination in the right-of-way is a human health hazard. Essentially, then, the court must review the Board's determinations that (1) NEPA is inapplicable to CITU issuance under the Trails Act, and (2) the Trails Act itself does not require an environmental assessment before issuance of the CITU.

■ The Trails Act, as amended by the National Trails System Act Amendments of 1983, Pub.L. 98–11, 97 Stat. 42, "is the culmination of congressional efforts to preserve shrinking rail trackage by con-verting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Under the Trails Act, the Board must "preserve established railroad rights-of-way for future reactivation of rail service" by prohibiting abandonment where, if the railroad is willing to enter into an agreement for trail use, a trail sponsor offers to assume responsibility for management, payment of taxes, and legal liability for the right-of-way and agrees to return the right-of-way should there ever be a proposal to reactivate the line for rail service. *See* 16 U.S.C. § 1247(d) (2000). If the parties reach agreement, the land may be transferred to the trail operator for interim trail use, subject to Board-imposed terms and conditions; if no agreement is reached, the railroad may abandon the line entirely and liquidate its interests. *See Preseault*, 494 U.S. at 7, 110 S.Ct. 914. By deeming interim trail use to be like discontinuance rather than abandonment, Congress sought to prevent property interests from reverting to the landowners under state law. *See id.* at 8, 110 S.Ct. 914.

■ The provisions of the Trails Act are straightforward. Section 8(d) of the amended Trails Act provides:

---

sponse actions will not protect human health and the environment. Finally, Union Pacific agreed to be responsible into perpetuity for the operation and maintenance of the various barriers that will be used in implementing the response actions. *Id.*

4. CART states in its brief that its members own land that adjoins the railroad right-of-way and that some members also own fee simple title to land over which the right of way runs. *See* Petitioners' Main Brief at 4. This claim is unchallenged by the Board. The Tribe, as intervenor, states in its brief that the rail line runs through the Coeur d'Alene Indian Reservation for 14 miles and through the Tribe's "ceded area" for the remainder of its full 71.5 mile length, and thus the Tribe is a reversionary interest holder of the right of way. *See* Intervenor's Brief at 5 *citing Idaho v. U.S.*, 533 U.S. 262, 121 S.Ct. 2135, 150 L.Ed.2d 326 (2001). As the State of Idaho explained at oral argument, "ceded area" refers to land the Tribe originally held but ceded to the United States during initial western expansion through various treaties. Because the land of CART's members will be directly affected by the conversion of the right-of-way to a trail, CART has a sufficient stake in the outcome of the instant case to give it Article III standing. *See State of Idaho, By and Through Idaho Pub. Utilities Comm'n v. I.C.C.*, 35 F.3d 585, 590 (D.C.Cir.1994); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 589, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

16 U.S.C. § 1247(d). The Board has promulgated regulations requiring sponsors to submit certain documentation describing the site and indicating the user's willingness to assume full responsibility for management, legal liability, and taxes, as well as an acknowledgment of the user's continuing obligation to meet its responsibilities subject to future reactivation of the right-of-way for rail service. *See* 49 C.F.R. § 1152.29. Upon receipt of such documentation, the Board applies a rebuttable presumption of fitness of a sponsor. *See Jost v. Surface Transp. Bd.,* 194 F.3d 79, 89 (D.C.Cir.1999). Thus, where the railroad is willing to enter negotiations with the sponsor, the abandonment is deferred and if the parties reach agreement within a certain time, no abandonment can occur until the user terminates trail use in an administrative proceeding; absent an agreement the CITU converts to a notice of abandonment. *See Jost,* 194 F.3d at 82; *Goos v. I.C.C.,* 911 F.2d 1283, 1286 (8th Cir.1990).

NEPA generally requires federal agencies to examine the environmental effects of proposed federal actions and to inform the public of the environmental concerns that were considered in the agency's decisionmaking. *See Baltimore Gas v. Natural Res. Defense Council,* 462 U.S. 87, 97, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). Specifically, NEPA requires agencies to prepare an environmental evaluation for all proposals for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (1994). NEPA applies to the Board's decisions to allow rail line abandonments. *See Idaho,* 35 F.3d at 595; 49 C.F.R. § 1105.6(b)(2). On the other hand, the Board has determined that NEPA does not require analysis of the environmental effects of possible interim trail use because the issuance of a CITU is only a ministerial act. *See Iowa Southern Railroad Co.–Exemption–Abandonment in Pottawattamie, Mills, Fremont and Page Counties, IA,* 5 I.C.C.2d 496, 502–03 (June 7, 1989). The Board adhered to this position in rejecting CART's arguments.

### III.

Because NEPA's mandate is addressed to all federal agencies, the Board's determination that NEPA is inapplicable to the Trails Act is not entitled to the deference that courts must accord to an agency's interpretation of its governing statute. *See Chevron v. Natural Res. Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *People Against Nuclear Energy v. U.S. Nuclear Regulatory Comm'n,* 678 F.2d 222, 227 n. 6 (D.C.Cir.1982).[5] Consequently, the issue

**5.** *Marsh v. Natural Res. Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), established that when a court reviews an agency's factual determination that a major federal action will not "significantly" affect the environment, review is governed by the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A). Thus, *Marsh* did not resolve the precise question of what review is appropriate in challenges to agency actions that raise the threshold legal question whether an action falls within NEPA in the first place.

of whether the Board erred in determining that its decision to issue a CITU under Trails Act is not subject to NEPA is a question of law, subject to de novo review. *See* 5 U.S.C. § 706.[6] We find no error in the Board's determination.[7]

■■■■ The touchstone of whether NEPA applies is discretion. The twofold purpose of NEPA is "to inject environmental considerations into the federal agency's decisionmaking process and to inform the public that the federal agency has considered environmental concerns in its decisionmaking process." *Macht v. Skinner,* 916 F.2d 13, ·18 (D.C.Cir.1990) (quoting *Weinberger v. Catholic Action of Hawaii/Peace Educ. Project,* 454 U.S. 139, 143, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981)). Such information may cause the agency to modify its proposed action. *See, e.g., Natural Res. Defense Council v. Morton,* 458 F.2d 827, 831 (D.C.Cir.1972). If, however, the agency does not have sufficient discretion to affect the outcome of its actions, and its role is merely ministerial, the information that NEPA provides can have· no affect on the agency's actions, and therefore NEPA is inapplicable. Thus, in *Macht v. Skinner,* the court affirmed the denial of federal action status to a project where the government had discretion only over a negligible portion of it. 916 F.2d at 19. Likewise, in *Atlanta Coalition on the Transp. Crisis, Inc. v. Atlanta Regional Comm'n,* 599 F.2d 1333 (5th Cir.1979), the

Fifth Circuit Court of Appeals held that the Federal Highway Administration's funding and certification of a regional planning process was not subject to NEPA because "[t]he federal decisions involv[ing] whether to certify and whether to fund do not entail the exercise of significant discretion." *Id.* at 1344–45. Other circuit courts of appeal have adopted similar analyses. *See, e.g., Sac & Fox Nation of Missouri v. Norton,* 240 F.3d 1250, 1262 (10th Cir. 2001); *Sierra Club v. Babbitt,* 65 F.3d 1502, 1513 (9th Cir.1995); *Sugarloaf,* 959 F.2d at 513; *Milo Cmty. Hosp. v. Weinberger,* 525 F.2d 144, 147 (1st Cir.1975).

■■■ To date, only the Eighth Circuit has addressed the precise issue raised by CART. In *Goos,* that court reasoned that because the I.C.C. was required by the Trails Act to issue a Notice of Interim Trail Use ("NITU") or a CITU whenever a private party files the statement of willingness to assume financial responsibility and the railroad agrees to negotiate, the role of the I.C.C. in the conversion proceedings "is essentially ministerial." 911 F.2d at 1295–96. The I.C.C. argued that the issuance of the NITU or CITU was incidental to the abandonment proceeding pursuant to 49 U.S.C. § 10903, was not a guarantee of eventual trail use, and that only the abandonment proceeding was subject to NEPA. *Id.* at 1293. The Eighth Circuit

---

**6.** Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

**7.** Several circuits to confront the same question have adopted a "reasonableness" standard of review. *See Northcoast Envtl. Ctr. v. Glickman,* 136 F.3d 660, 667 (9th Cir.1998); *Sugarloaf Citizens Ass'n v. F.E.R.C.,* 959 F.2d 508, 511 (4th Cir.1992); *Goos,* 911 F.2d at 1291. We understand this to mean that the courts conducted de novo review.

agreed. Relying on its precedent,[8] the Eighth Circuit focused on the fact that the I.C.C. has no legal or factual control over the outcome of the negotiations between the railroad and the trail sponsors; it can neither compel a trail conversion between unwilling parties nor does it have discretion to refuse one if voluntarily negotiated. *Id.* at 1295. The court noted that the I.C.C. had interpreted § 1247(d) to give it no power to compel a conversion by condemnation of the right-of-way, because Congress had determined that trail use is desirable for a particular line only when certain commitments are voluntarily made. *Id.* The court concluded that:

> Because the I.C.C. has not been granted any discretion under section 1247(d) to base its issuance of an NITU or CITU on environmental consequences, … it would make little sense to force the I.C.C. to consider factors which cannot affect its decision to issue an NITU or CITU.

*Id.* at 1296. In addition, the court concluded that the I.C.C. lacked sufficient factual control for NEPA to apply because the federal government does not fund the conversion and "there is otherwise no federal involvement sufficient to turn what is essentially a private, voluntary action into federal action." *Id.*

We agree with the Eighth Circuit in *Goos* that the absence of significant discretion in the Board regarding issuance of a CITU removes that issuance from the reach of NEPA. Heretofore this court has held that the I.C.C. reasonably interpreted the Trails Act to accord it no power to force transfers of the rights-of-way when the railroad is unwilling. *See Nat'l Wildlife Fed'n v. I.C.C.*, 850 F.2d 694 (D.C.Cir. 1988). Further, the court has held that the I.C.C. could reasonably establish a rebuttable presumption of fitness of a private sponsor who filed the required documentation. *See Jost*, 194 F.3d at 89. In neither case did the court view the I.C.C.'s role as involving significant discretion with regard to issuance of a CITU. To the contrary, in *Jost* the court cited *Goos* with approval in observing that the Trails Act requires that the Board " 'shall' impose a trail condition … whenever a railroad is prepared to convey the right-of-way to an organization that is 'prepared to assume full responsibility' for management of the line, for liability, and for taxes owed." *Id.* at 89 (quoting 16 U.S.C. § 1247(d)).

CART nonetheless contends that the Board has substantial discretion in deciding to issue a CITU because, in its view, the Trails Act imposes six decisions on the Board before it can issue a CITU.[9] An examination of the decisions that CART identifies indicates, however, that they relate either to the statutory conditions for sponsorship or to decisions that Congress

---

8. In *Winnebago Tribe of Nebraska v. Ray*, 621 F.2d 269 (8th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980), the court held that issuance of a federal permit for part of a non-federal construction project did not make the entire project subject to NEPA because there was no grant of legal control over the entire project. *See id.* at 272. *See also Ringsred v. Duluth*, 828 F.2d 1305, 1308 (8th Cir.1987).

9. CART identifies the six decisions to be: "(1) The corridor must be suitable for use as a public recreational trail as part of the nation-

al trails system, (2) trail use and conditions must be consistent with the National Trails System Act, (3) the corridor must be preserved for future restoration or reconstruction for railroad purposes, (4) a trail sponsor must be prepared to assume full responsibility for management of rights-of-way as trails, (5) a trail sponsor must be prepared to assume full responsibility for any liability arising out of the transfer or use, and (6) once the above conditions are met, the STB is to impose terms and conditions on a transfer or conveyance for trail use in a manner consistent with the National Trails System Act."

has determined shall be made by the railroad and trail sponsor in their voluntary agreement, if any. For example, the decision whether a corridor is suitable for use as a public recreational trail as part of the national trails system has been made by Congress. In the Trails Act, Congress determined that all rail lines that are to be abandoned are potentially suitable for trail use and left the precise configuration of the trail use to the parties' voluntary agreement. *See Iowa Southern Railroad Co.–Exemption–Abandonment in Pottawattamie, Mills, Fremont and Page Counties, IA,* 5 I.C.C.2d 496, 502–03 (June 7, 1989). Although CART might prefer that the suitability determination be made by the Board, Congress did not impose that responsibility on the Board. The Board thus could reasonably interpret its responsibilities under the Trails Act to be largely ministerial without, as CART suggests, abdicating its statutory responsibility under NEPA. On the other hand, the decision whether a trail sponsor is prepared to assume full responsibility for management of the trail, as well as legal and tax liabilities, is addressed by the Board through a rebuttable presumption; no more is required. *See Jost,* 194 F.3d at 89. For these reasons, we are unpersuaded that these "six decisions" provide the Board with sufficient discretion to render NEPA applicable to issuance of a CITU under the Trails Act.

## IV.

CART's alternative contention that the Trails Act itself requires a separate environmental analysis prior to issuance of a CITU also fails. In reaching this conclusion, we apply *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778, to determine whether the Board's determination that a separate environmental analysis is not required by § 1247(d) is "a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

Section 1247(d) directs the Board to issue a CITU subject to terms and conditions imposed by the Board. It does not expressly refer to environmental considerations, and the legislative history does not indicate that environmental unfitness would bar trails conversion and mandate abandonment. *See* H.R. Rep. 28, 98th Cong., 1st Sess., p. 8 (1983), U.S. Code Cong. & Admin. News at 112, 119. As interpreted by the Board, the terms and conditions referred to in § 1247(d) relate to the requirement that a sponsor assume the financial and legal obligations associated with the right-of-way and that use of the land is subject to future restoration of rail service. *See* 49 C.F.R. § 1152.29(c)(2) (2000). Thus, if a qualified trail sponsor submits the required statement of willingness, and the railroad is willing to negotiate a trail use agreement, and the Board has approved abandonment of the rail line, the Board must issue a CITU. *See id.* at § 1152.29(c)(1). Official Board policy establishes a presumption of fitness of such a trail sponsor. *See Jost,* 194 F.3d at 89. Under the Board's interpretation, then, its discretion is substantially restrained.

Congress' stated purposes in enacting the Trails Act were twofold: to preserve rail corridors for future railroad use and to permit public recreational use of trails. *See Preseault,* 494 U.S. at 10, 110 S.Ct. 914. Accordingly, Congress used language that focused on those purposes, implicitly leaving environmental considerations either to environmental assessments accompanying the abandonment proceeding, the parties' agreement, or other federal or state and local law. Nothing in the text or the legislative history suggests a contrary Congressional intent. Indeed, because the trails conversion arises after an abandonment determination in which environmental considerations have been

addressed, the scheme Congress envisioned for trail conversion recognized that the railroad would be aware of some of its environmental remediation responsibilities before agreeing to discuss an agreement with trail sponsors. Because the Board's interpretation of its role in CITU issuance is consistent with Congress' intention that the parties voluntarily reach agreement on public trail use, we hold that the Board could reasonably conclude that Congress did not intend for the Board to conduct a separate environmental assessment for a CITU.

Finally, it bears noting that the particular concerns CART raises about the environmental suitability of the railroad's right-of-way for a public trail are not without remedy. As the Board noted, the consent decree entered into by the State and the Tribe with the railroad provides for the environmental remediation that CART asserts is required. *See supra* note 3. This became clear at oral argument when counsel for CART was unable to identify any further environmental remediation that would likely result from an environmental assessment under NEPA. In light of the consent decree, the additional environmental assessment under NEPA during the remand in the abandonment proceeding, and the four conditions imposed by the Board, CART fails to show that their environmental concerns have not been addressed.

Accordingly, we deny the petition.