# United States Court of Appeals for the Federal Circuit

———————————

**DOROTHY L. BIERY, JULIA R. CHALFANT ETVIR TRUST, K.A.K. FARMS, INC., AMERICAN PACKAGING CORPORATION, AND COLLINS INDUSTRIES, INC.,**
*Plaintiffs-Appellants,*

**GORDON HOLLOWAY, as successor and representative of decedent, GEORGE A. HOLLOWAY, AND STACY E. JUDY TRUST,**
*Plaintiffs,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

———————————

2013-5082

———————————

Appeal from the United States Court of Federal Claims in No. 07-CV-0693, Judge Nancy B. Firestone.

———————————

Decided: June 4, 2014

———————————

MARK F. (THOR) HEARNE, II, Arent Fox, LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were MEGHAN S. LARGENT, LINDSAY S.C. BRINTON, and STEPHEN S. DAVIS. Of counsel was DEBRA J. ALBIN-RILEY, of Los Angeles, California.

NINA ROBERTSON, Attorney, Appellate Section, Environmental and Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief was ROBERT G. DREHER, Acting Assistant Attorney General.

---

Before PROST,[*] *Chief Judge*, SCHALL and O'MALLEY, *Circuit Judges.*

SCHALL, *Circuit Judge*

Plaintiffs-Appellants Dorothy L. Biery, the Julia R. Chalfant Etvir Trust, K.A.K. Farms, Inc., American Packaging Corporation, and Collins Industries, Inc., are landowners in Kansas. Each of them owns land abutting a 2.88-mile stretch of rail corridor near the City of South Hutchinson, Kansas. In the late nineteenth and early twentieth centuries, their predecessors in interest granted various deeds covering that land to the Hutchinson & Southern Railroad Company. The Burlington Northern and Santa Fe Railway ("BNSF") eventually succeeded to the interests of that railroad. Up until 2004, the corridor served the operations of the BNSF. Plaintiffs-Appellants brought this action in the United States Court of Federal Claims, alleging that the subsequent conversion of the corridor to a recreational trail pursuant to the National Trail Systems Act ("Trails Act"), 16 U.S.C. § 1247(d), constituted a taking of their several property interests in the land underlying the corridor. As a result, they claimed, they were entitled to compensation under the Fifth Amendment.

---

[*]   Sharon Prost assumed the position of Chief Judge on May 31, 2014.

On April 9, 2013, pursuant to Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC"), the Court of Federal Claims entered judgment in favor of the government on plaintiffs-appellants' claims. *Biery v. United States*, Nos. 07-693L, 07-675L (Fed. Cl. Apr. 9, 2013). The court did so after ruling on summary judgment that none of the plaintiffs-appellants possessed a fee-simple property interest in the land underlying the rail corridor that could be the subject of a taking. *Biery v. United States*, Nos. 07-693L, 07-675L (Fed. Cl. Aug. 20, 2009) ("*Initial Decision*"). The court concluded that the land had been conveyed to the BNSF's predecessor in fee simple, contrary to plaintiff-appellants' claims that the several conveyances at issue had only granted easements. Plaintiffs-Appellants now appeal from the court's judgment.[1]

For the reasons set forth below, we conclude as follows: (1) The underlying land claimed by plaintiffs-appellants Julia R. Chalfant Etvir Trust and K.A.K. Farms, Inc. ("Chalfant") was conveyed to the BNSF's predecessor in fee simple. Chalfant thus has no compensable property interest in the land. (2) The underlying land claimed by plaintiff-appellant Dorothy L. Biery ("Biery") was not conveyed to the BNSF's predecessor in fee simple. Rather, the railroad's predecessor was only granted an easement over the land. Biery thus retains

---

[1]  Plaintiffs Gordon Holloway, as Successor and Representative of Decedent, George A. Holloway, and the Stacy E. Judy Trust also own land abutting the 2.88-mile stretch of rail corridor. They too brought a takings claim in the Court of Federal Claims. The court found that their predecessors had granted only an easement to the BNSF's predecessor. Their claims, therefore, remained in the litigation and are not before us on appeal. *Initial Decision* at 2.

fee-simple title to the land, a compensable property interest. (3) On the present record, it is not clear whether the underlying land claimed by plaintiffs-appellants American Packaging Corporation and Collins Industries, Inc. ("American Packaging") was held by the BNSF's predecessor in fee simple or whether the BNSF's predecessor simply held an easement over the land. Of the three deeds at issue for American Packaging, the first-in-time granted the railroad's predecessor only an easement over the land. The two subsequent deeds, though, conveyed fee-simple interests. The effect of these deeds, however, is clouded by chain-of-title questions. Thus, we cannot presently say whether American Packaging holds fee-simple title to the land, a compensable property interest. Accordingly, we affirm the judgment of the Court of Federal Claims as it relates to Chalfant, but reverse it as it relates to Biery and American Packaging. The case is remanded to the court for further proceedings.

BACKGROUND

I.

LEGAL FRAMEWORK

The Fifth Amendment to the Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The first issue to be addressed in a takings case is whether the claimant has a cognizable interest in the property that allegedly was taken. *Air Pegasus of D.C, Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005). If the claimant does not have such an interest, that is the end of the matter. *Id.* at 1212–13. The court does not then proceed to the next step in the analysis, which is to determine whether there was a taking. *Id.*

As noted, in 2004, the stretch of rail corridor at issue was converted to a public trail pursuant to the Trails Act. If, prior to the conversion, the BNSF held fee-simple title

to the land underlying the corridor, then, for their part, plaintiffs-appellants possess no compensable property interests. That is because the railroad's fee-simple title would constitute complete ownership in the land. 1 Tiffany Real Prop. § 27 (3d ed. 2013). If, however, the BNSF held only easements over the land, then plaintiffs-appellants retained a fee-simple interest in the land. Under those circumstances, if the BNSF's conversion of the railroad tracks to a recreational trail was outside the scope of the easements and thus constituted abandonment, then the BNSF would have lost its interest because "if the beneficiary of [an] easement abandons it, the easement disappears, and the landowner resumes his full and unencumbered interest in the land." *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257, 1265 (2014) (citing *Smith v. Townsend*, 148 U.S. 490, 499 (1893)). In short, if plaintiffs-appellants hold fee-simple title to the land, they may potentially have a compensable property interest for purposes of a takings claim.

The issue in this case is whether the deeds from the late nineteenth and early twentieth century, upon which the BNSF's interest was predicated, granted fee-simple interests to the railroad's predecessor, or merely easements. We therefore begin by briefly setting forth the conveyances that are relevant to the claim of each of the several plaintiffs-appellants. We then turn to the events leading up to this lawsuit and the subsequent proceedings in the Court of Federal Claims.

## II.

### A. CHALFANT APPELLANTS

The Chalfant appellants claim the land referenced in the deed from Julia Fair (the "Julia Fair deed") to the Hutchinson & Southern Railroad in the late nineteenth century. In 1889, a condemnation decree declared a right-of-way for the Hutchinson, Oklahoma & Gulf Railroad across land owned by Thomas Fair. It is undisputed that

the railroad took only an easement over the land at that time. The condemnation decree does not mention Thomas's wife, Julia Fair. After the condemnation, the Hutchinson, Oklahoma & Gulf Railroad merged with the Hutchinson & Southern Railroad Company. In 1899, after Thomas Fair had died, Julia Fair executed a quitclaim deed to the Hutchinson & Southern Railroad for the same land that was subject to the earlier condemnation proceeding. The relevant language from the deed states that, for $3,500, Ms. Fair transferred the following interest to the railroad:

> A strip of land one hundred <100> feet wide being fifty <50> feet on each side of the center line of the railroad of the Hutchinson & Southern Railway as the same is now located and constructed[2] over and across section thirty five <35> township twenty three <23> range six <6> with the appurtenances and all the estate, title and interest of the said parties of the first part therein.

Joint Appendix ("J.A.") 703–04, 918.

### B. BIERY APPELLANT

Appellant Biery claims the land referenced in the deed from the Phillips Investment Company (the "Phillips deed") to the Hutchinson & Southern Railroad. Similar to the land claimed by Chalfant, the land claimed by Biery was originally subject to condemnation proceedings. In 1899, the Phillips Investment Company executed an indenture in favor of the Hutchinson & Southern Railroad

---

[2]    The legibility of the 1899 deed is insufficient to confirm that the word "constructed" is used rather than "constricted," but "constructed" makes the most sense in context. Regardless, it does not change the outcome.

on a preprinted form titled "Right of Way Deed."[3]   In exchange for $117 in consideration, the Phillips deed transferred the following property interest to the railroad:

> All that part of the East half of the North West quarter of Section twenty three (23) Township twenty three (23) South of Range six (6) West, lying South of the South line of Tenth Avenue extended and East of a line thirty-five (35) feet west and parallel to the center of the track of the Hutchinson and Southern Railway Company, containing 1.16 acres, more or less, and being the tract on which condemnation proceedings were filed in the County Treasurer's Office on July 25, 1899.

J.A. 1482–83.  The deed also transfers an interest in land described as "Lots one hundred and sixty eight (168) and one hundred and seventy (170) Sixth Avenue West in Blanchard's Second Addition to the City of Hutchinson." *Id.* at 1482.  In pre-printed language, the deed recites the transfer as being "of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises, with the appurtenances . . . ." *Id.*

### C. AMERICAN PACKAGING APPELLANTS

The American Packaging appellants claim the land referenced in the deed from Ella Rowland and H. Edward Rowland (the "Rowland deed") and in two deeds from the Irrigation Loan & Trust Company (the "Irrigation Loan deeds") to the Hutchinson & Southern Railroad.

---

[3]   The legibility of the deed is poor, and the word "Warranty" appears to have been written over the words "Right of Way."

An 1891 condemnation decree declared a right-of-way for the Hutchinson & Southern Railroad across forty-six lots in Blanchard's Third Addition in South Hutchinson, Kansas. Subsequently, in 1896, Ella and H. Edward Rowland executed a quitclaim deed to the Hutchinson & Southern Railroad that describes a series of lots matching those described in the 1891 condemnation decree. After listing the lots, the deed states the following language of conveyance: "For and in consideration of $1.00 and the conveyance[4] of all the right of way now occupied by said Railroad in Blanchard's Third Addition to the City of South Hutchinson." J.A. 706, 1436.

In 1901, the Irrigation Loan & Trust Company executed two quitclaim deeds to the railroad. For $144 in consideration, the first deed quitclaims an interest in a strip of land described as "[t]he West sixty-six (66) feet of the west half (1/2) of the South Quarter (1/4) of Section number Twenty-Three (23) . . . ." J.A. 1434. For $65.60 in consideration, the second deed quitclaims an interest in a series of lots that make up a portion of the lots listed in the 1891 condemnation decree and in the 1896 Rowland quitclaim deed.

In 1906, for $5,025 in consideration, the Rowlands executed a quitclaim deed to Harriet B. Hettinger, transferring their interest in the lots described in the 1896 deed, but noting that the railroad had a "right of way consisting of a strip the width of two lots (60 feet) off of and along the west side" of the property. J.A. 982.

---

[4] The transcription of the hand-written deed uses the word "convenience" instead of "conveyance," but the parties agreed during oral arguments that "conveyance" is a more proper transcription. J.A. 706, 1436.

### D. The BNSF's Interest

As noted, the BNSF's interest in the properties at issue began with condemnation proceedings in the late nineteenth century brought by the Hutchinson, Oklahoma & Gulf Railroad and the Hutchinson & Southern Railroad. Sometime after those condemnation proceedings, the two railroads merged into the Atchison, Topeka and Santa Fe Railroad, which subsequently merged with the Burlington Northern Railroad to become the BNSF.

In 1983, Congress passed legislation amending the Trails Act to "preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. Interstate Commerce Comm'n* (*Preseault I*), 494 U.S. 1, 5 (1990) (citing 16 U.S.C. § 1241 *et seq*.). By converting unused railways to recreational trails as an interim use, the Interstate Commerce Commission could maintain control over the right-of-way and prevent it from reverting to landowners under state law, thus preserving it for possible future railroad use. *Id.* at 6–8. Under the law, therefore, before abandoning an unused railway, a railroad must seek permission from the Surface Transportation Board ("Board"). *Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267 F.3d 1144, 1149 (D.C. Cir. 2001). If the railroad and the Board reach agreement, the land underlying the railway may be transferred to a trail operator (e.g., state, political subdivision, or qualified private organization) for interim trail use. *Id.* If no agreement is reached, the railroad may abandon the line and liquidate its interests. *Id.* (citing *Preseault I*, 494 U.S. at 7). Depending on the scope of the railroad's interest in the property, the conversion of the railway to a recreational trail may constitute a compensable taking under the Fifth Amendment. *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1552 (Fed. Cir. 1996) (en banc).

In 2004, after having discontinued its use, the BNSF sought the Board's permission to abandon the railway that ran across the properties at issue in this case. Soon after, the BNSF and the City of South Hutchinson entered into a Trail Use Agreement. In donating its property to the city for trail use, the BNSF noted that it may not have held fee-simple title or any other interest in the property. Subsequently, plaintiffs-appellants claimed ownership of the land underlying the railway and sought compensation for a taking.

## III.

### PROCEEDINGS IN THE COURT OF FEDERAL CLAIMS

Plaintiffs-Appellants filed suit in the Court of Federal Claims in 2007 under the Tucker Act, 28 U.S.C. § 1491, alleging a taking and seeking compensation under the Fifth Amendment. On cross motions for summary judgment, the court found that neither the Julia Fair deed, the Phillips deed, the Rowland deed, nor the Irrigation Loan deeds contained any use restrictions or reversionary clauses. *Initial Decision* at 3–4. Accordingly, the court held that the BNSF and its predecessor acquired fee-simple title in the properties described in the deeds. *Id.* Because the BNSF owned the properties in fee simple rather than holding mere easements, the court determined, plaintiffs-appellants had no compensable property interests that were subject to a taking. *Id.*

Plaintiffs-Appellants appealed to this court immediately after the summary judgment order. Because the Court of Federal Claims had not entered a partial judgment under RCFC 54(b), and because claims were still pending, we dismissed the Notice of Appeal as premature. *Biery v. United States*, 358 F. App'x 172 (Fed. Cir. 2009). In 2013, the court entered final judgment pursuant to RCFC 54(b), dismissing the claims of the five plaintiffs-appellants. They appealed again. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

STANDARD OF REVIEW

This appeal stems from a grant of summary judgment. We review *de novo* the grant of summary judgment. *Ladd v. United States*, 713 F.3d 648, 651 (Fed. Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). We review *de novo* legal conclusions of the Court of Federal Claims. *Barclay v. United States*, 443 F.3d 1368, 1372 (Fed. Cir. 2006).

As noted, the issue on appeal is the nature of the BNSF's property interest in the several strips of land underlying its former railroad tracks. More specifically, we must determine whether the BNSF's predecessor took fee-simple title in the land or merely an easement. The nature and scope of a property interest in a rail corridor is a question of state law. *Preseault II,* 100 F.3d at 1534. Under Kansas law, "the interpretation and legal effect of written instruments are matters of law." *Stone v. U.S.D. No. 222*, 91 P.3d 1194, 1203 (Kan. 2004).

With this background in mind, we turn first to Kansas law. We then address the several parcels of land at issue.

II.

KANSAS LAW

Kansas courts have "uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed." *Harvest Queen Mill & Elevator Co. v. Sanders*, 370 P.2d 419, 423 (Kan. 1962) (analyzing and reaffirming the rule laid out in *Abercrombie v. Simmons*, 81 P. 208 (Kan. 1905)). To determine whether a railroad

took property as a right-of-way, Kansas courts first look to the deed itself. *Stone*, 91 P.3d at 1203–04.

In construing a deed, the first step is to determine whether it is ambiguous. *Cent. Natural Res., Inc. v. Davis Operating Co.*, 201 P.3d 680, 687 (Kan. 2009) (citing *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 738 P.2d 866 (Kan. 1987)). In making this determination, Kansas courts "apply the plain, general, and common meaning of the terms used in the instrument." *Id.* (citing *Johnson v. Johnson*, 645 P.2d 911 (Kan. 1982)). "An instrument is ambiguous when the application of pertinent rules of interpretation to the whole 'fails to make certain which one of two or more meanings is conveyed by the words employed by the parties.'" *Id.* (quoting *Wood v. Hatcher*, 428 P.2d 799 (Kan. 1967)). If the language of a deed is ambiguous, we may consider facts surrounding the deed's execution in order to clarify the parties' intent. *Id.* at 688. For example, the size of the land may help in determining whether a right-of-way was intended in an ambiguous deed. *Stone*, 91 P.3d at 1204.

If, however, the language of a deed to a railroad is unambiguous, we look no further than its four corners and analyze it according to the general rule in Kansas. *Id.* at 1203. "The general rule is that deeds purporting to convey to railroads a strip, piece, parcel, or tract of land which do not describe or refer to its use or purpose or directly or indirectly limit the estate conveyed are generally construed as passing an estate in fee." *Id.* at 1203–04. In simpler terms, when an unambiguous deed to a railroad contains no use restrictions, reversionary clause, or anything else indicating the land is for a right-of-way, the title to the land is granted in fee simple. *Id.* at 1204.

## III.

### A. THE JULIA FAIR DEED

To determine whether the Chalfant appellants have a compensable property interest, we consider whether the 1899 Julia Fair deed granted the Hutchinson & Southern Railroad fee-simple title or merely an easement. Finding that the deed contained no use restrictions or reversionary clause, the Court of Federal Claims held that the deed granted the railroad fee-simple title. *Initial Decision* at 3.

As noted, the Julia Fair deed quitclaimed to the Hutchinson & Southern Railroad an interest in a strip of land 100 feet wide "with the appurtenances and all the estate, title and interest" therein. J.A. 703–04. Chalfant argues that the Julia Fair deed was undertaken to clarify the railroad's right-of-way easement. According to Chalfant, the railroad needed the deed because the earlier condemnation decree had listed only Thomas Fair—the late husband of Julia. In analyzing the words of the deed, Chalfant argues that it describes the conveyance as being "over and across" the land described, which, according to Chalfant, indicates a right-of-way. The Court of Federal Claims erred, Chalfant concludes, by ignoring Kansas law and holding that a quitclaim deed in a strip of land to a railroad for a right-of-way conveyed fee-simple title.

The government responds that the 1899 deed from Julia Fair expressly and unambiguously conveyed all the estate, title, and interest of Ms. Fair. The deed contained no use restrictions or other limitations on the interest conveyed. On this basis alone, the government argues, the deed conveyed fee-simple title. Further, the government argues, the railroad had no need to clarify the interest it had taken from Thomas Fair because his wife, Julia, did not own the land at the time of the condemnation. According to the government, Julia received Thomas's interest after he died. She then transferred that

interest to the railroad for $3500—more than five times the amount the railroad originally paid for its easement.

We conclude that the Julia Fair deed transferred fee-simple title to the Hutchinson & Southern Railroad. First, we find the words of the deed to be unambiguous; thus, we do not look beyond its four corners. Second, we find no language in the deed indicating that the parties intended to limit the railroad's interest to a right-of-way. Rather, the deed conveyed "all the estate, title, and interest" of Julia Fair. She retained no reversionary interest. Accordingly, the Julia Fair deed transferred fee-simple title to the railroad. *See Stone*, 91 P.3d at 1203–04.

We are not persuaded by Chalfant's argument regarding the words "over and across." Those words reflect the simple truth that the railroad tracks run over and across the land that Ms. Fair transferred; they do not place a limitation on the transfer itself. Further, the fact that the railroad paid $3,500 for the land indicates that, contrary to Chalfant's suggestion, the railroad received more than just confirmation of an easement.

Accordingly, because Chalfant has no compensable property interest that could have been subject to a taking, we affirm the dismissal of its claim.

## B. THE PHILLIPS DEED

Next, we consider whether the Biery appellant has a compensable property interest. To do so, we must determine whether the Phillips deed granted the Hutchinson & Southern Railroad fee-simple title, or merely an easement. Noting that the deed recited the words "fee simple," and finding that it did not contain any use restrictions or reversionary clause, the Court of Federal Claims held that it granted the railroad fee-simple title. *Initial Decision* at 3–4.

As noted, the Phillips deed conveyed an interest in two tracts of land. The deed describes the first tract in

relation to the centerline of the railway and as "the tract on which condemnation proceedings were filed." It describes the second tract without any reference to the railroad or the railway. The deed appears to be titled "Right of Way Deed" and contains pre-printed language that the estate was granted as "an absolute and indefeasible estate of inheritance, in fee simple." As noted above, however, the word "warranty" appears to have been written over the words "Right of Way."

Biery argues that the Phillips deed granted only an easement to the railroad. The document, Biery urges, is titled "Right of Way Deed" and describes a strip of land that was previously subject to condemnation proceedings. According to Biery, the court erred by focusing on the words "fee simple" because, under Kansas law, the words "fee simple" are not determinative of the right granted.

The government responds that the descriptive title "Right of Way Deed" does not limit the property right to an easement because the deed does not contain any use limitations. Regarding the "fee simple" language, the government responds that Biery cannot meet its burden of proof by pointing to a remote possibility that the grantor did not mean "fee simple" when he wrote "fee simple."

We conclude that the Phillips deed granted an easement to the Hutchinson & Southern Railroad over the first tract of described land and granted the railroad fee-simple title to the second tract. The deed was originally titled "Right of Way Deed," which would indicate that the railroad received only an easement. *See Harvest Queen*, 370 P.2d at 424 ("For many years it has been the established law of this state that railroads receive easements only in strips taken as rights-of-way, regardless of whether they are taken by condemnation or deed."). The title is illegible, however, and the phrase "Right of Way" appears to have been crossed out, making it unclear from the title what the parties intended.

Although the title of the instrument may be unclear, the contents of the Phillips deed are unambiguous and make clear the parties' intent. Under Kansas law, a deed grants an easement when it describes or refers to the land's use or purpose, directly or indirectly, as being for a right-of-way. *Stone*, 91 P.3d at 1203–04. The Phillips deed describes the first tract of land in relation to the centerline of the railway and as the tract on which condemnation proceedings were filed. By describing the first tract of land in relation to the condemnation proceedings, we believe the parties intended to convey or confirm a right-of-way for the railroad, and therefore an easement. Regarding the government's reliance on the pre-printed language that uses the words "fee simple," we note that such language is not dispositive. *See Abercrombie*, 81 P. at 210 ("The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling.").

Although the pre-printed language is not determinative of the first tract of land, we believe it nonetheless may be given meaning. The second tract of land—lots 168 and 170—was conveyed with no use restrictions, reversionary clause, or anything else limiting its use to a right-of-way. We conclude that the second tract, therefore, was conveyed in fee simple to the railroad. *See Stone*, 91 P.3d at 1203–04.

Because we conclude that the Phillips deed conveyed only an easement in the first tract of land described, we hold that the Court of Federal Claims erred in dismissing Biery's claim.

### C. THE ROWLAND DEED AND IRRIGATION LOAN DEEDS

To determine whether the American Packaging appellants have a compensable property interest, we consider the interests granted to the Hutchinson & Southern Railroad in the Rowland deed and in the two Irrigation Loan deeds. Like the deeds of the other appellants, the

Court of Federal Claims found that the Rowland deed and the two Irrigation Loan deeds transferred fee-simple title to the railroad because none of the deeds contained any use restrictions or reversionary clauses. *Initial Decision* at 3.

The 1896 Rowland deed lists a series of lots—lots that were also listed in earlier condemnation proceedings—and recites that it is for "the conveyance of all the right of way" that was occupied at the time by the railroad. J.A. 706. The two Irrigation Loan deeds likewise list various lots—including some of those in the Rowland deed—but have no reference to a right-of-way. J.A. 1434–39.

American Packaging argues that the Court of Federal Claims failed to properly apply Kansas law to the deeds. Moreover, it argues that no factual basis exists for the court's conclusion that the Irrigation Loan & Trust Company held fee-simple title to the land. If the Irrigation Loan & Trust Company never held fee-simple title, American Packaging contends, it could not have conveyed fee-simple title to the Hutchinson & Southern Railroad.

The government counters that the Court of Federal Claims correctly held that the three deeds at issue conveyed fee-simple title because none contained use restrictions or reversionary clauses. The government further argues that, although the Rowland deed uses the term "right-of-way," it does not do so in a way that restricts use of the land. Regarding American Packaging's argument that the Irrigation Loan & Trust Company did not have a fee-simple interest to convey, the government contends that the chain of title shows that the Irrigation Loan & Trust Company did in fact hold title to the properties at issue.

We conclude that the Rowland deed conveyed only an easement to the railroad. Under Kansas law, railroads do not acquire fee-simple title to narrow strips of land taken as rights-of-way. *Harvest Queen*, 370 P.2d at 423. As

noted, for $1 in consideration, the Rowland deed lists a series of lots that match those in the earlier condemnation proceedings and states that it is for "the conveyance of all the right of way" occupied at that time by the railroad. The unambiguous language describes the use as a right-of-way, therefore indicating that the parties expressly, or at a minimum, impliedly, intended to convey or confirm an easement. *See Abercrombie*, 81 P. at 210 ("But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate—usually an easement—as is requisite to effect the purpose for which the property is required." (quoting 2 Elliott on Railroad, § 400)).

Regarding the government's argument that the term "right-of-way" must be used in a way that expressly restricts use of the land in order to avoid transferring fee-simple title, we do not read Kansas law to be so restrictive. To the extent any ambiguity exists in the deed's use of the term "right-of-way," however, the Rowland's subsequent transfer of the land resolves it. In 1906, ten years after executing the quitclaim deed at issue in this case, the Rowlands executed another deed. For $5,025 in consideration, the Rowlands quitclaimed their interest to H. B. Hettinger in the same lots as the 1896 deed, noting that the land was subject to a right-of-way by the railroad. J.A. 982. In our view, the 1906 deed's reference to an existing right-of-way confirms the conclusion that the parties to the 1896 deed intended to convey only an easement. *See Stone*, 91 P.3d at 1203 (noting that extrinsic evidence such as "subsequent deeds referring to a right-of-way" may help resolve whether an ambiguous deed granted an easement). We therefore hold that the Court of Federal Claims erred in ruling that the Rowland deed conferred a fee-simple interest.

Regarding the Irrigation Loan deeds, they both appear clear and unambiguous. Neither mentions any purpose for the land or any limitation on the railroad's use. Both, therefore, conveyed the entire estate owned at the time by the Irrigation Loan & Trust Company. *See Stone*, 91 P.3d at 1203–04. We conclude, therefore, that the Court of Federal Claims correctly construed the Irrigation Loan deeds.

Nevertheless, because the court erred in construing the Rowland deed, it erred in dismissing American Packaging's claim as to the land described in that deed. The chain of title shows that the Rowlands issued a quitclaim deed to the Hutchinson & Southern Railroad in 1896, which conveyed an easement. The record does not show any conveyance from the Rowlands to the Irrigation Loan & Trust Company between 1896 and 1901. If the Irrigation Loan & Trust Company did not possess an undivided fee-simple interest in the land in 1901, it could not have conveyed such an interest to the railroad. Moreover, because the Irrigation Loan & Trust Company deeds are quitclaim deeds, they may have conveyed no property interest at all. *See* 14 R. Powell, Powell on Real Property § 81A.03[1][c] (Michael Allen Wolf ed., LexisNexis Matthew Bender 2013) (explaining that with a quitclaim deed, "[t]he grantor makes no assurance to the grantee that he or she actually has good title to, or even any interest at all in, the property . . . ."). We remand to the Court of Federal Claims to evaluate the chain of title and determine the extent to which American Packaging has a property interest stemming from the Rowland's earlier property interest.[5]

---

[5] The 1906 deed from the Rowlands suggests that their interest in the land continued past the Irrigation Loan & Trust Company's transfer in 1901. *See* J.A. 982. We leave it to the Court of Federal Claims on remand to

CONCLUSION

We affirm the grant of summary judgment with respect to Chalfant, reverse the grant of summary judgment with respect to Biery and American Packaging, and remand the case to the Court of Federal Claims to determine the merits of Biery's and American Packaging's claims.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Each party shall bear its own costs.

---

evaluate how this evidence resolves the chain-of-title question.