# United States Court of Appeals for the Federal Circuit

---

**JACK LADD, JOBETH LADD, JOHN LADD, MARIE LADD, GAIL A. LANHAM, JAMES A. LINDSEY, MICHAEL A. LINDSEY, WILLIAM LINDSEY, CHARLIE MILLER, PAULINE MILLER, RAYMOND MILLER, VALENTIN CASTRO, III, DEBORAH ANN CASTRO REVOCABLE TRUST, JOSEPH LAWRENCE HEINZL, TAMMY WINDSOR-BROWN,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5086

---

Appeal from the United States Court of Federal Claims in No. 07-CV-271, Judge Robert H. Hodges Jr..

---

Decided: April 9, 2013

---

MARK F. (THOR) HEARNE, II, Arent Fox LLP, of Clayton, Missouri, argued for plaintiffs-appellants. With him on the brief were LINDSAY S.C. BRINTON and MEGHAN S. LARGENT; DEBRA J. ALBIN-RILEY and JOSEPH L. CAVINATO, III, of Los Angeles, California.

MICHAEL T. GRAY, Attorney, Appellee Section Environment & Natural Resources Division, United States Department of Justice, of Jacksonville, Florida, argued for the defendant-appellant. With him on the brief was IGNACIA S. MORENO, Assistant Attorney General. Of counsel was WILLIAM J. SHAPIRO, Attorney, of Sacramento, California.

---

Before RADER, *Chief Judge,* LOURIE, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge*

Jack Ladd et. al. (landowners) appeal from the Court of Federal Claims's (CFC) dismissal of their taking claims as barred by the statute of limitations. Because the landowners' claims are not time-barred, we *reverse* and *remand* for further proceedings. We *affirm* the remaining issues appealed.

## BACKGROUND

This appeal is the second appeal in this rails-to-trails case. *See Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) (*Ladd I*). *Ladd I* details the procedural history of this case, which we repeat only as necessary to resolve this second appeal.

The landowners own tracts of land in southern Arizona near the border between the United States and Mexico. *Ladd I*, 630 F.3d at 1017. In 1903, the El Paso & Southwestern Railway Company (El Paso) acquired a right of way to use a 100-foot wide, 76.2-mile long strip of land to build and operate a railroad. *Id.* El Paso and its successor operated the railroad for approximately a century but ultimately initiated proceedings to abandon the railway with the Department of Transportation's Surface Transportation Board (STB). *Id.* During the proceeding, the STB issued a Notice of Interim Trail Use

or Abandonment (NITU) in 2006 that authorized the railroad to convert the railway into a public trail pursuant to the National Trails System Act Amendments of 1983 (Trails Act). *See* 16 U.S.C. § 1247(d).

The landowners filed suit in 2007. They alleged that the issuance of the 2006 NITU constituted a compensable Fifth Amendment taking because it operated to convert the limited right-of-way into a public trail. *Ladd I*, 630 F.3d at 1017–18. The CFC dismissed the case, concluding that a taking had not occurred because the government had not physically invaded the landowners' property to construct the trail; it had only issued a NITU. *Id.* at 1018–19. We reversed and held that the landowners' takings claim accrued on the date that the 2006 NITU issued. *Id.* at 1023–25 (citing *Caldwell v. United States*, 391 F.3d 1226, 1233–34 (Fed. Cir. 2004) and *Barclay v. United States*, 443 F.3d 1368, 1374 (Fed. Cir. 2006)).

During discovery in the remand proceedings, the government produced a NITU affecting the landowners' property that had issued in 1998. There was no indication that the NITU was published in the Federal Register or a newspaper, and the landowners submitted declarations that they were not aware of the 1998 NITU. The CFC nevertheless held that the statute of limitations began to run in 1998 and that the landowners' takings claims were time-barred because they did not file their takings claims until 2007. The court concluded that the *Ladd I* mandate did not foreclose it from reaching the statute of limitations issue.

The CFC also held that one group of landowners, the Lindsey family, lacked an ownership interest in the land subject to the taking. The court reached this conclusion because the Lindsey family's predecessor-in-title had conveyed the tract in "fee simple" to the railroad company.

The landowners appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

We review without deference the legal aspects of the CFC's determination that the statute of limitations bars a takings claim. *Caldwell*, 391 F.3d at 1233. We likewise review *de novo* the interpretation of our own mandate, *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950 (Fed. Cir. 1997), as well as the CFC's grant of summary judgment, *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003). Rule 56(c) of the Rules of the United States Court of Federal Claims states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

II.

The landowners argue that the CFC violated the scope of the mandate in *Ladd I* when it considered the government's liability on remand. They assert that, in *Ladd I*, we remanded the case for the limited purpose of determining the compensation owed to the landowners for the taking. They contend that the record on liability was fully developed such that the *Ladd I* panel held that the government was liable for taking the landowners' property.

We disagree. We did not decide the government's liability in *Ladd I* when we reversed the CFC's dismissal of the landowners' claims. We reviewed the record, construing all facts in the landowners' favor, and concluded that the court erred as a matter of law when it concluded that the STB's issuance of the 2006 NITU could not constitute a compensable taking. *Ladd I*, 630 F.3d at 1023 n.4, 1025. We did not expressly address any other issue regarding the landowners' taking claims, such as whether

the landowners had the requisite property interest, nor could we have found those facts in the first instance on appeal. *See id.* at 1023 n.4 ("The government disputes the character of the property rights in this case. For purposes of summary judgment, however, we must assume facts in favor of the appellants."). Thus, the mandate in *Ladd I* did not bar the CFC from addressing the government's liability on remand.

## III.

The landowners argue that the CFC erred in concluding that the statute of limitations began to run upon the issuance of the 1998 NITU and not the issuance of the 2006 NITU. They argue that, under the accrual suspension rule, their takings cause of action did not accrue until they knew or should have known about the 1998 NITU. The landowners argue that they did not know, and could not have known, that the STB issued the 1998 NITU and rely on four pieces of evidence in support: (1) none of the landowners received the 1998 NITU; (2) the government failed to establish that the 1998 NITU was published in a newspaper or the Federal Register; (3) the railroad did not change its use of the right-of-way as a result of the 1998 NITU; and (4) there is no record of any public hearings related to the 1998 NITU. The landowners point out that the government's position throughout the first four years of the litigation was that the 2006 NITU was the first one that the STB issued. The landowners argue that the accrual suspension rule should apply because, under these circumstances, the should have known requirement is not met with regard to the 1998 NITU.

The government contends that the accrual suspension rule does not apply because it did not conceal the issuance of the 1998 NITU and its issuance was not inherently unknowable. The government explains that, in 1997, it published notice in the Federal Register that STB had exempted the railroad company from certain abandon-

ment requirements under federal law. It argues that the 1997 exemption notice put the landowners on notice of the process that "might have led to a NITU." Brief for the United States at 31, 2012 WL 4667602. The government also points to the STB rules, which require a railroad company applicant to publish newspaper notice of the abandonment exemption proceedings in the relevant counties. Finally, the government argues that *Barclay* and *Caldwell* implicitly hold that landowners always have constructive notice of the issuance of a NITU and that a contrary holding would undermine the bright-line claim accrual rule from those cases.

We agree with the landowners that the claim accrual suspension rule applies. Generally, "a claim alleging a Fifth Amendment taking accrues when the act that constitutes the taking occurs." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009). In the context of Trails Act cases, the cause of action accrues when the government issues the first NITU that concerns the landowner's property. *Ladd I*, 630 F.3d at 1024–25. The statute of limitations requires a plaintiff to file suit within six years from the date the cause of action accrues. 28 U.S.C. § 2501; *Ladd I*, 630 F.3d at 1024–25.

A claim's accrual, however, is suspended if the plaintiff shows (1) that the government concealed its acts such that the plaintiff was unaware of their existence; or (2) that the injury was "inherently unknowable." *Ingrum*, 560 F.3d at 1314–15. The "inherently unknowable" standard is shorthand for the proposition that a claim does not accrue until the claimant "knew or should have known" that the claim existed. *Id.* at 1315 n.1; *Holmes v. United States*, 657 F.3d 1303, 1317 n.12 (Fed. Cir. 2011).

Here, the evidence shows that the issuance of the 1998 NITU was inherently unknowable. The landowners testified that they did not know about the 1998 NITU. J.A. 1780–1810. The government does not provide any

evidence to the contrary, and it does not question the veracity of the landowners' testimony.

There is also no reason that the landowners should have known about the 1998 NITU. The government admits that there is no evidence that the 1998 NITU was published in the Federal Register or in a newspaper. Nor is there any evidence that the railroad company that initiated the STB proceedings published newspaper notice of the NITU. The government was not even aware of the 1998 NITU until 2011, and had consistently taken the position in this litigation that the first NITU issued in 2006. J.A. 632, 1201. Hence, there is no evidence that the 1998 NITU was made public in any way. There was also no public notice of abandonment; in fact, the railroad continued to operate the railway until 2005. J.A. 505. Hence, there was nothing to put the landowners on notice of the abandonment.

The STB's 1997 publication of an exemption notice in the Federal Register does not remedy the landowners' lack of notice of the 1998 NITU. It is well settled that publication of a document in the Federal Register provides "notice of the contents of the document." 44 U.S.C. § 1507; *Fed. Crop. Ins. Co. v. Merrill*, 332 U.S. 380, 384–85 (1947). But the 1997 notice did not provide information such that the landowners knew or should have known that the STB would issue a NITU concerning their property. The notice of exemption states only that: "The Board, pursuant to 49 U.S.C. 10502, exempts SWKR Operating Co. from the prior approval requirements of 49 U.S.C. 10903 to abandon the stub-end of its Douglas Branch, subject to historic preservation, trail use, public use, and standard labor protective conditions." Notice of Exemption, 62 Fed. Reg. 7086-01 (Feb. 14, 1997).

The 1997 exemption notice does not state that the STB will issue a NITU for the affected railway. Nor does the STB automatically issue a NITU after it grants a

request for an exemption. A NITU will only issue if private parties perform additional actions before the STB. First, a potential trail operator must file a petition that includes: (1) a map of the right-of-way proposed to be acquired; (2) a statement indicating that the trail operator will assume financial and legal liability for the right-of-way; and (3) an acknowledgement that the right-of-way may be reactivated for railroad use in the future. 49 C.F.R. § 1152.29(a). That had yet to occur when the 1997 exemption notice issued. J.A. 1592–93. After the petition is submitted, the railroad company must then agree to negotiate with the trail operator and communicate that intent to the STB. 49 C.F.R. § 1152.29(b)(2). Only after these predicate conditions are satisfied will the STB issue a NITU. *Id.* § 1152.29(d). Given these circumstances, the Notice of Exemption was not sufficient to put the landowners on notice of the 1998 NITU. At most, it put them on notice that the railroad, if it chose to abandon in the future, would be exempt from certain requirements. This, however, is not sufficient, under these circumstances, to put them on notice of a future NITU that may or may not issue. We hold that the 1997 exemption notice did not put the landowners on notice that a NITU affecting their property would issue.[1]

Our decision is consistent with *Barclay* and *Caldwell*. The claim accrual suspension doctrine was not at issue in

---

[1] Moreover, should the STB issue a NITU, it is possible that the NITU may cover only a subset of the land listed in the notice of exemption because the NITU only covers "the portion of the right-of-way as to which both parties are willing to negotiate." 49 C.F.R. § 1152.29(d)(1). This additional uncertainty further underscores why it would be improper to hold that the 1997 exemption notice informed the landowners that their land would be subject to a NITU.

either case. Instead, those cases simply stand for the proposition that the issuance of a NITU triggers the accrual date of the takings cause of action. *Barclay*, 443 F.3d at 1378; *Caldwell*, 391 F.3d at 1233, 1235–36. More particularly, those cases hold that "the issuance of the original NITU," rather than subsequent NITUs, is the event that "triggers the accrual date of the cause of action." *Barclay*, 443 F.3d at 1378. Neither case addressed whether and under what circumstances the claim accrual suspension doctrine should apply in Trails Act cases. And there is no indication that the landowners in those cases lacked constructive or actual notice of the NITUs that affected their respective property.

Finally, we disagree with the government's assertion that suspending the claim accrual date in this case will eviscerate the "bright-line rule" for claim accrual that *Barclay* and *Caldwell* establish. *See Barclay*, 443 F.3d at 1378. The claim accrual suspension rule is "strictly and narrowly applied." *Ingrum*, 560 F.3d at 1314–16. It only applies where, as here, a landowner lacks any notice that the STB has issued a NITU concerning a railway that runs through the landowner's property. The outcome of this case might well have been different if the 1998 NITU had been published in the Federal Register or a newspaper or if the railroad company had, prior to 2001, discontinued train service and removed the track and ties. But none of this happened. There is simply no reason why the landowners should have known about the 1998 NITU. And even the government was not aware of the 1998 NITU until 2011—four years into this case. In these circumstances, the government's interest in bright-line legal rules must yield to the landowners' right to receive actual or constructive notice that their claims have accrued. Accordingly, we reverse the CFC's dismissal of the landowners' takings claims.

IV.

The landowners also argue that the CFC's dismissal of their claims violated their due process rights because they never had *actual* notice of the 1998 NITU. The landowners argue that the Due Process Clause requires a constitutional claimant to have actual notice of a claim before the statute of limitations begins to run. Because we have already concluded that the landowners' claims were not time-barred, we will not address their constitutional arguments.

V.

Lastly, the Lindsey family argues that the CFC erred in concluding that the Lindsey deed conveyed their parcel to the railroad company in fee simple. They argue that the deed only conveys an easement and merely contained customary quitclaim recitals to convey that easement "in fee simple." They argue that the deed only granted a right "over, through across and upon" the land, and the words "fee simple" do not override that limited grant of an easement.

The government contends that the Lindsey family waived this argument by failing to raise it below. The Lindsey family does not respond to this argument. We agree with the government that the Lindsey family waived its right to challenge the CFC's construction of the Lindsey deed.

The Lindsey family did not raise the construction of the Lindsey deed during the remand proceedings below. On remand, the government moved for summary judgment that the Lindsey family lacked a compensable property interest under Arizona law because the Lindsey family's predecessor-in-title conveyed its interest to the railroad company in "in fee simple." Mem. in Supp. of Mot. to Dismiss, at 15–18, *Ladd v. United States*, No. 1:07-cv-271 (Fed. Cl. Sept. 15, 2011), ECF No. 113. The

landowners, including the Lindsey family, filed a single response to the government's motion. The landowners' response raised four arguments: (1) that our mandate in *Ladd I* precluded the government from rearguing liability; (2) that the 2006 NITU constituted a compensable taking; (3) that a number of landowners, not including the Lindsey family, conveyed only an easement to the railroad company pursuant to the General Railroad Right-of-Way Act of 1875; and (4) that the 1998 NITU did not trigger the statute of limitations. Pls.' Corrected Opp. to the Government's Renewed Mot. to Dismiss, at 12–39, *Ladd v. United States*, No. 1:07-cv-271 (Fed. Cl. Oct. 3, 2011), ECF No. 116-1. The landowners did not address the Lindsey deed at all, and the CFC granted the government's motion for summary judgment that the Lindsey family lacked a compensable property interest.

The Lindsey family argues, for the first time on appeal, that the Lindsey deed conveyed an easement, and not the fee simple estate. Because they failed to raise this argument below, we find it waived and decline to address it. *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). We thus affirm the CFC's grant of summary judgment that the Lindsey family lacked a compensable property interest.

## CONCLUSION

We have considered the parties remaining arguments and conclude that they lack merit. For the foregoing reasons, the decision of the CFC is

## **AFFIRMED-IN-PART**, **REVERSED-IN-PART**, **and REMANDED.**

### COSTS

Costs to Plaintiffs-Appellants.