# United States Court of Appeals for the Federal Circuit

---

**DANIEL HAGGART, KATHY HAGGART, ET AL.,
FOR THEMSELVES AND AS REPRESENTATIVES
OF A CLASS OF SIMILARLY SITUATED PERSONS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2018-1757

---

Appeal from the United States Court of Federal Claims
in No. 1:09-cv-00103-CFL, Senior Judge Charles F. Lettow.

---

Decided: November 27, 2019

---

CARTER GLASGOW PHILLIPS, Sidley Austin LLP, Washington, DC, argued for plaintiffs-appellees Daniel Haggart, Kathy Haggart, Cleveland Square, LLC, RC TC Meridian Ridge LLC, TWOSONS LLC, Dennis J. Crispin, Gretchen Chambers, DeBlois Properties LLC, Star L. Evans, Michael B. Jacobsen, Molly A. Jacobsen, Frances Jane Lee, Susan B. Long, Claudia Mansfield, Frederick P. Miller, Susan L. Miller, Leslie Milstein, PBI Enterprises LLC, Michael G. Russell, Elana Russell, James M. Sather, Kelly J. Sather, James E. Strang, Patricia Strang, Alison L. Webb, D. Michael Young, Julia H. Young, Faramarz Ghoddoussi,

Westpoint Properties, LLC.  Also represented by THOMAS
SCOTT STEWART, ELIZABETH MCCULLEY, Stewart Wald &
McCulley, LLC, Kansas City, MO; STEVEN WALD, St. Louis,
MO.  Plaintiffs-appellees Cleveland Square, LLC, RC TC
Meridian Ridge LLC, TWOSONS LLC, Dennis J. Crispin,
Gretchen Chambers, DeBlois Properties LLC, Star L. Ev-
ans, Michael B. Jacobsen, Molly A. Jacobsen, Frances Jane
Lee, Susan B. Long, Claudia Mansfield, Frederick P. Mil-
ler, Susan L. Miller, Leslie Milstein, PBI Enterprises LLC,
Michael G. Russell, Elana Russell, James M. Sather, Kelly
J. Sather, James E. Strang, Patricia Strang, Alison L.
Webb, D. Michael Young, Julia H. Young also represented
by LOUIS DAVID PETERSON, Hillis, Clark, Martin & Peter-
son PS, Seattle, WA.  Plaintiffs-appellees Faramarz Ghod-
doussi, Westpoint Properties, LLC also represented by
RICHARD SANDERS, Tacoma, WA.

DAVID CHARLES FREDERICK, Kellogg, Huber, Hansen,
Todd, Evans & Figel, PLLC, Washington, DC, argued for
plaintiffs-appellees Gordon Arthur Woodley, Denise Lynn
Woodley.  Also represented by JOANNA ZHANG.

ERIC GRANT, Environment and Natural Resources Di-
vision, United States Department of Justice, Washington,
DC, argued for defendant-appellant.  Also represented by
JEFFREY H. WOOD, BRIAN C. TOTH, JEFFREY B. CLARK,
WILLIAM B. LAZARUS, MARY GABRIELLE SPRAGUE.

---

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit
Judges.*

WALLACH, *Circuit Judge.*

Appellees Daniel Haggart, Kathy Haggart, et al. (col-
lectively, "Landowners") filed this "rails-to-trails" class ac-
tion against the United States ("Government"), claiming
that the Government, through the National Trails System
Act, effected a Fifth Amendment taking of Landowners'

reversionary rights to property underlying railroad easements owned by the BNSF Railway Company. On remand, the U.S. Court of Federal Claims granted a motion to enforce a settlement agreement ("the Settlement Agreement") that the parties had previously negotiated and agreed upon. *Haggart v. United States* (*Haggart VI*), 131 Fed. Cl. 628, 643 (2017) (J.A. 1–16). Thereafter, the Court of Federal Claims entered a partial final judgment pursuant to Rule 54(b) of the Rules of the U.S. Court of Federal Claims, approving the Settlement Agreement, but deferring determination on the amount of attorney fees and costs to award class counsel under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"). *Haggart v. United States* (*Haggart VIII*), 136 Fed. Cl. 70, 81 (2018) (J.A. 28–39); *see* J.A. 40 (Rule 54(b) Judgment).

The Government appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012). We affirm.

## BACKGROUND[1]

In 2013, the Government and Landowners negotiated and agreed to the terms of the Settlement Agreement. *See* J.A. 2903–04; *see also* J.A. 2931–62 (Settlement Agreement).[2] In May 2014, the Court of Federal Claims

---

[1] The procedural history of this case is extensive, involving seven reported opinions by the Court of Federal Claims and a prior opinion by this court. We provide a summary of only those proceedings relevant here, which occurred after we remanded this case to the Court of Federal Claims in *Haggart v. Woodley* (*Haggart V*), 809 F.3d 1336 (Fed. Cir. 2016). We assume familiarity with the prior procedural history of this case, a thorough recitation of which may be found in *Haggart V*. *See id.* at 1340–43.

[2] Pursuant to the Settlement Agreement, the Government agreed to pay Landowners $140,541,218.69,

approved the Settlement Agreement and awarded class counsel $33,172,243.74 in attorney fees under the common fund doctrine,[3] in addition to the attorney fees set forth in the Settlement Agreement. *See Haggart v. United States* (*Haggart IV*), 116 Fed. Cl. 131, 148–49 (2014). In *Haggart V*, we vacated the Court of Federal Claims' approval of the Settlement Agreement and award of common-fund attorney fees. 809 F.3d at 1359. We held that the Court of Federal Claims "erred in approving a settlement agreement where class counsel withheld critical information . . . necessary for . . . class members to make an informed decision," "such as the spreadsheets detailing the precise methodology used to calculate the fair market value of the properties." *Id.* at 1351. We also held that the Court of Federal Claims erred in awarding class counsel fees under the common fund doctrine, because the URA addresses the "inequity" that would warrant the doctrine's application, by "provid[ing] class counsel with reasonable fees as compensation for their efforts." *Id.* at 1357–58; *see* 42 U.S.C. § 4654(c) (2012).

---

consisting of: $110,000,000.00 in principal; $27,961,218.69 in annual interest, "based upon an estimated date of payment of May 31, 2014"; and $2,580,000.00 in statutory attorney fees and costs under the URA. J.A. 2932–33.

[3] Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney[] fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see Knight v. United States*, 982 F.2d 1573, 1580 (Fed. Cir. 1993) ("Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees against benefits some received as a result of the advocacy of another.").

On remand, the Court of Federal Claims conducted a hearing in August 2016, discussing: (1) the status of the case; (2) the necessary steps before the Court of Federal Claims could hold a second fairness hearing, including what information needed to be disclosed to the class members; and (3) how to deal with potential objectors. J.A. 5047–102 (Hearing Transcript). In the succeeding months, the parties engaged in extensive motions practice. *See, e.g.*, J.A. 5106–13 (Request for a Trial Setting), 5277–302 (Motion for Partial Summary Judgment), 5483–90 (Motion for Partial Summary Judgment), 5547–50 (Motion for Summary Judgment), 5560–65 (Motion for Summary Judgment), 5814–20 (Cross Motion for Summary Judgment), 5826–29 (Motion for Summary Judgment). In March 2017, the Court of Federal Claims heard arguments on the parties' motions. J.A. 7436–515 (Hearing Transcript). The following month, class counsel moved to enforce the Settlement Agreement. J.A. 7516–42 (Motion to Enforce the Settlement Agreement).

In May 2017, the Court of Federal Claims granted class counsel's Motion to Enforce the Settlement Agreement and denied all other outstanding motions. *Haggart VI*, 131 Fed. Cl. at 633; *see* J.A. 7543–44 (Judgment). The court concluded that "the Settlement Agreement was and remains a binding and enforceable contract" that "[t]he [G]overnment cannot avoid . . . even if it now has had a change of heart and wishes to back out[.]" *Haggart VI*, 131 Fed. Cl. at 641. In a footnote, the Court of Federal Claims rejected the Government's argument that the parties had "abandoned" the Settlement Agreement, finding the claim to be "manifestly inconsistent with the [G]overnment's previous positions before the court of appeals and th[e C]ourt [of Federal Claims.]" *Id.* at 641 n.11.

In July 2017, the Government filed a motion for reconsideration, arguing that the parties had abandoned the Settlement Agreement, as evidenced by their conduct on remand. J.A. 8174, 8209–14. Following a hearing in

August 2017, the Court of Federal Claims denied the Government's motion, *see Haggart v. United States* (*Haggart VII*), 133 Fed. Cl. 568, 572 (2017) (J.A. 17–27), finding that "the [G]overnment ha[d] not met its burden of demonstrating that the parties unequivocally intended to abandon the Settlement Agreement," *id.* at 576.

In August 2017, class counsel filed a motion for preliminary approval, notice, and a fairness hearing on the Settlement Agreement. J.A. 8684–93. In October 2017, the Court of Federal Claims preliminarily approved the Settlement Agreement and "also approve[d] the proposed plan for notice and a Notice of Settlement to be mailed to the class members under that plan." J.A. 9159; *see* J.A. 9160–69 (Notice). In December 2017, the Court of Federal Claims conducted a fairness hearing, J.A. 9726–863 (Hearing Transcript), at which no class member objected to the Settlement Agreement, *see* J.A. 9739 (counsel for class members Faramarz Ghoddoussi and Westpoint Properties, LLC explaining that his clients were "in support of the [S]ettlement [Agreement]"), 9739 (counsel for an independent group of class members explaining that "[a]ll members of my group have approved th[e Settlement Agreement] and we would like to see it approved by [the Court of Federal Claims]"), 9797–98 (class members explaining that they supported approval of the Settlement Agreement), 9802–07 (same). In January 2018, the Court of Federal Claims issued an opinion and order, approving the Settlement Agreement as "procedurally" and "substantively fair," *Haggart VIII*, 136 Fed. Cl. at 76–77, and entered a partial final judgment pursuant to Rule 54(b) "in the total amount of $159,636,521.65, consisting of $110,000,000 in principal and $49,636,521.65 in interest," *id.* at 81. The Court of Federal Claims deferred determining the amount of attorney fees and costs until "[a]fter all proceedings . . . have been completed and the court's judgment is final[.]" *Id.*

DISCUSSION

I. Standard of Review and Legal Standard

On remand, the Court of Federal Claims granted class counsel's Motion to Enforce the Settlement Agreement after reviewing the motion under the standard for summary judgment. *See Haggart VI*, 131 Fed. Cl. at 636–37 (setting forth the standard for summary judgment), 639–43 (treating class counsel's Motion to Enforce the Settlement Agreement under the standard for summary judgment). While our case law does not explicitly address the standard under which we review a district court's decision to summarily enforce a settlement agreement, we have held that a district court's exercise of its inherent powers, which include the power to summarily enforce settlement agreements, *see Core–Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995) ("Courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." (internal quotation marks, brackets, and citation omitted)), is reviewed for an abuse of discretion, *see Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1376 (Fed. Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)) ("A court's exercise of its inherent powers is reviewed for an abuse of discretion."). Accordingly, we join the majority of our sibling courts in holding that a district court's decision whether to summarily enforce a settlement agreement is reviewed for an abuse of discretion. *See, e.g.*, *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (reviewing a district court's decision whether to summarily enforce a settlement agreement for an abuse of discretion). In determining whether a district court has abused its discretion, we review the district court's underlying factual determinations for clear error. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017) ("A district court abuses its discretion when it . . . exercises its discretion based upon . . . clearly erroneous factual findings." (internal quotation marks, brackets, and citation omitted)).

Abandonment is a question of fact. *See Preseault v. United States*, 100 F.3d 1525, 1546 (Fed. Cir. 1996) (en banc). An agreement may be abandoned only through mutual assent of the parties, *see, e.g.*, *Graham v. James*, 144 F.3d 229, 238 (2d Cir. 1998) ("[A]bandonment of a contract can be accomplished only through mutual assent of the parties[.]"), which may be expressed in writing or orally, or may be inferred from the acts or conduct of the parties, *see, e.g.*, *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005) ("[I]t is not necessary to meet and state either in writing or orally that the original contract was rescinded. If the intent to abandon can be ascertained from the acts and conduct of the parties the same result will be attained." (internal quotation marks and citation omitted)). Where abandonment is to be inferred, it must be "demonstrated by positive and unequivocal conduct inconsistent with an intent to be bound." *Graham*, 144 F.3d at 238; *see, e.g.*, *Anstalt v. F.I.A. Ins. Co.*, 749 F.2d 175, 178 (3d Cir. 1984) ("When . . . abandonment of a contract is to be implied from the conduct of the parties, the actions must be positive and unequivocal.").[4]

---

[4] Our sibling courts have held that where a material factual dispute "concerning the existence or terms of [a settlement] agreement" exists, "the matter must be remanded to the district court in order to conduct an evidentiary hearing." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Here, while the parties dispute whether the Settlement Agreement was abandoned, *see* Appellant's Br. 2, 24–26, 42–48; Appellees' Br. 23–30; Woodleys' Br. 35–46, they do not contest the underlying record evidence, *see* Appellant's Br. 24 ("[T]he relevant history . . . consists of record facts that do not turn on credibility determinations[.]"). *See generally* Appellees' Br.; Woodley's Br. Thus, "[n]othing would

## II. The Court of Federal Claims Did Not Clearly Err in Finding that The Parties Did Not Abandon the Settlement Agreement or Abuse Its Discretion in Granting Class Counsel's Motion to Enforce the Settlement Agreement

The Court of Federal Claims found that the Government failed to "demonstrat[e] that the parties unequivocally intended to abandon the Settlement Agreement." *Haggart VII*, 133 Fed. Cl. at 576. The court accordingly concluded that the Settlement Agreement "remains a binding and enforceable contract." *Id.* at 578. The Government argues that the Court of Federal Claims erred in finding no abandonment because "undisputed record facts show a positive and unequivocal intent on the part of class counsel to abandon . . . the [S]ettlement [A]greement[.]" Appellant's Br. 26. Specifically, the Government contends that class counsel's conduct on remand, including statements made before the Court of Federal Claims in August 2016 and in earlier letters to class members, was "inconsistent with any intent to preserve the [Settlement A]greement[.]" *Id.* at 29, 48; *see id.* at 24–35. We disagree with the Government.

The Court of Federal Claims did not clearly err in finding no mutual intent to abandon the Settlement Agreement, as the parties' conduct on remand did not rise to the level of "positive and unequivocal conduct inconsistent with an intent to be bound." *Graham*, 144 F.3d at 238. Instead, the parties' conduct evidences an effort to address various legal and factual uncertainties. For example, following remand, it was unclear whether, and to what extent, class members would object to their individual settlement amounts. *See, e.g.*, J.A. 5077 (the Government agreeing with the Court of Federal Claims that "there

---

be gained by requiring a further proceeding at the trial level." *Preseault*, 100 F.3d at 1546.

might be some [class members] . . . who are not happy with the settlement," but acknowledging that "we don't know that . . . at this stage of the game"). This was significant because, as the Government explained, if class members objected, the parties would likely "have . . . to reopen settlement negotiations." J.A. 5065–66. Given the unknown number of potential objectors, which class counsel initially believed could be "anywhere between [five] and [thirty] class members," J.A. 5070, class counsel expressed doubts at the August 2016 hearing about whether "the settlement . . . [was] still in place," J.A. 5069. These and other statements by class counsel were not, however, unequivocal expressions of intent to abandon the Settlement Agreement as the Government contends. *See* Appellant's Br. 24–35. Instead, class counsel was apparently responding to the uncertainties facing the parties. At the same hearing, class counsel indicated that he had begun the "process of meeting with all 253 class members" to ascertain whether they were likely to object to their individual settlement amounts, J.A. 5070, which the Government agreed was the proper course of action, *see* J.A. 5064 (the Government explaining that "class counsel needs to provide the information that will enable the individual class members to determine whether the split of . . . money is fair, and [the parties] need to go from there"). As class counsel explained, his "goal [was] to resurrect[5] the [S]ettlement

---

5    The Government argues that class counsel's use of the term "resurrect" is "inconsistent with preserving the settlement," Appellant's Br. 26; *see id.* at 26–29, but as class counsel aptly points out, use of this term is consistent with "the reality that no one knew at the time whether or how many [c]lass [m]embers might object . . . and what the outcome would be . . . if such objections were raised," Appellees' Br. 34–35; *see* J.A. 5110 (class counsel explaining that "the alternative to trying to *resurrect* the settlement . . . is to merely start over" (emphasis added)).

[Agreement] for any and every class member that wants it resurrected[,]" and he advised the court that of the "200 class members that [class counsel had] met with" so far, "[a]ll but one [was] completely satisfied." J.A. 5070–71.

The Government's reliance upon class counsel's statements in letters to class members to show abandonment, *see* Appellant's Br. 26–29, fairs no better, as these statements were made in the context of the same uncertainties facing the parties in August 2016. For example, considering the likely consequences of potential objectors, class counsel correctly explained, in a letter to class members, that "the total amount of loss incurred . . . could be open to reconsideration" and, as a result, each class member's individual settlement amount "could" end up being more or less. J.A. 8224. Nothing about class counsel's statements demonstrates an unequivocal intent to abandon the Settlement Agreement. In fact, in a subsequent letter, class counsel advised class members that he understood the Government to be "taking the position that the underlying base settlement . . . [was] still intact[,]" and continued to express his desire to "resurrect the initial settlement amounts for any and all [c]lass [m]embers who were satisfied before, and are satisfied now after further disclosures [were] made." J.A. 8227; *see* J.A. 7764 (class counsel reiterating that his "first priority and goal [was] to resurrect the prior settlement for any and all [c]lass [m]embers that were satisfied with their settlement"). Class counsel advised class members, as he would the Court of Federal Claims, that he was "meeting[] with [c]lass [m]embers," and was "pleased to report" that the majority of class members were satisfied with their individual settlement amounts, and "ha[d] already signed 'Reconsent' forms to resurrect the . . . [S]ettlement [Agreement]." J.A. 7764.

Notably, the Government began arguing that the parties had "abandoned" the Settlement Agreement only after *Kaseburg v. Port of Seattle*, No. C14-0784 JCC, 2016 WL 4440959 (W.D. Wash. Aug. 23, 2016), *aff'd*, No. 16-35768,

2018 WL 3687555 (9th Cir. Aug. 3, 2018), was issued. *See* J.A. 7592–93 (the Government arguing, for the first time in May 2017, that the "the parties' post-remand conduct demonstrates that they abandoned the . . . Settlement Agreement"). In *Kaseburg*, seventy-eight plaintiffs, all members of this class action, filed suit requesting an order quieting title in the property at issue in this case against a number of defendants, including King County, Washington ("King County"). *See* 2016 WL 4440959, at *1. King County counterclaimed to quiet title against the plaintiffs. *See id.* The district court issued decisions on summary judgment in favor of the defendants, ultimately dismissing plaintiffs' claims and quieting title to King County. *See id.* at *11–12. Prior to *Kaseburg* being issued—indeed, only days before at the August 2016 hearing—the Government represented to the Court of Federal Claims that there was no need to "reopen[] settlement negotiations," because the parties "ha[d] a settlement number." J.A. 5063–64; *see* J.A. 5064 (the Government explaining that "it would be premature" to refer "this case . . . to the settlement judge all over again"). While the Government admits that *Kaseburg* "changed" its "settlement posture," Appellant's Br. 38; *see* J.A. 5388 (the Government explaining that it had been "in [a] settlement posture," but "[t]he *Kaseburg* decision changed all of that"), the Government denies, despite the coincidental timing, that *Kaseburg* prompted its abandonment argument, *see* Appellant's Reply Br. 14–16. Regardless, the Government's abandonment argument fails as the record does not demonstrate the parties' mutual intent to abandon the Settlement Agreement by "positive and unequivocal conduct." *Graham*, 144 F.3d at 238.[6]

---

6    While the Government also relies upon class counsel's Request for a Trial Setting and statements made by class counsel therein to show abandonment, *see* Appellant's Br. 29–35, 37, class counsel requested a trial date only

Accordingly, the Court of Federal Claims did not clearly err in finding that the Government failed to meet "its burden of demonstrating that the parties unequivocally intended to abandon the Settlement Agreement," *Haggart VII*, 133 Fed. Cl. at 576, or abuse the court's discretion in granting class counsel's Motion to Enforce the Settlement Agreement.

## III. We Lack Jurisdiction to Address The Government's Argument that the Court of Federal Claims Erred by Not Limiting Class Counsel to the Agreed Amount of URA Fees and Costs

The Court of Federal Claims entered a partial final judgment, pursuant to Rule 54(b), as to the principal and interest amounts under the Settlement Agreement, but deferred consideration of attorney fees and costs until "[a]fter all proceedings . . . have been completed and the court's judgment is final[.]" *Haggart VIII*, 136 Fed. Cl. at 81. The Government argues that the Court of Federal Claims "erred by enforcing the [Settlement Agreement] as to the principal amounts of compensation and interest but not limiting [class] counsel to the agreed amount of URA fees and costs." Appellant's Br. 58; *see id.* at 58–61.

---

after the Government failed to respond to class counsel's multiple inquiries "concerning [the Government's] position going forward." J.A. 5107; *see* J.A. 5112 (class counsel requesting that the Government "[p]lease let [class counsel] know [the Government's] position as soon as possible[,] . . . [a]lternatively, [class counsel] will ask [the Court of Federal Claims] for a trial setting"). Moreover, as class counsel argues, when he stated in the request that "the prior settlement no longer exists," he did so because, based on "the Government's silence following the *Kaseburg* decision," Appellees' Br. 44, he could no longer "assume that any portion of the prior settlement can or will be resurrected," J.A. 5108.

Specifically, the Government argues that because the Settlement Agreement awarded $2,580,000.00 in "statutory attorney[] fees and costs . . . pursuant to the URA," and because the agreement provides that this amount is "inclusive of all interest, attorney[] fees, and other litigation expenses that have been or could be incurred," no URA fees above that amount may be awarded. *Id.* at 60 (quoting J.A. 2932). We lack jurisdiction to address the Government's argument at this time.

The Court of Federal Claims did not make a decision concerning attorney fees and costs. *See Haggart VIII*, 136 Fed. Cl. at 81. Rather, as the Government admits, the Court of Federal Claims "expressed its *intent* to 'entertain applications for attorney[] fees and expenses,'" but has not yet ruled on them. Appellant's Br. 59 (emphasis added) (quoting J.A. 9860–91; *Haggart VIII*, 136 Fed. Cl. at 81). We ordinarily only have jurisdiction over appeals from "final decision[s]" of the Court of Federal Claims, i.e., ones that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (citation omitted); *see* 28 U.S.C. § 1295(a)(3) (providing that we "have exclusive jurisdiction of an appeal from a *final* decision" of the Court of Federal Claims (emphasis added)). The Supreme Court has acknowledged a "narrow class" of "exception[s] to the final decision rule" which "do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotation marks and citations omitted). We are not persuaded, however, that a determination on the amount of attorney fees and costs to award class counsel under the URA, if any, is within that narrow class of exceptions. Accordingly, we lack jurisdiction to address the Government's argument in this regard.

At oral argument, the Government expressed concern that Landowners would invoke the mandate rule to

foreclose the Government's arguments with respect to URA fees when this case returns to the Court of Federal Claims. *See* Oral Arg. at 16:42–17:05, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1757.mp3. The mandate rule provides that "issues actually decided on appeal—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (internal quotation marks, brackets, and citation omitted). Because the issue of attorney fees and costs is not within the scope of the judgment below, the mandate rule is inapplicable, and the Government may subsequently raise its arguments with respect to this issue before the Court of Federal Claims.[7]

CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive.[8] Accordingly, the

---

[7] This is true notwithstanding a curious statement at oral argument by counsel for class members Gordon and Denise Woodley that he would only "accept for hypothetical purposes" that there "will not be waiver issues" only "if the Government litigates correctly." Oral Arg. at 41:01–41:52.

[8] The Government argues, for the first time on appeal, that class counsel repudiated the Settlement Agreement. *See* Appellant's Br. 25–42; Appellant's Reply Br. 23 (the Government admitting that its repudiation argument is an "*elaboration* of the argument made" before the Court of Federal Claims (emphasis added)); *see also Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 608 (2000) ("[R]epudiation is a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach." (internal quotation marks and citation omitted)). While the Government had the opportunity to raise

Partial Final Judgment of the United States Court of Federal Claims is

**AFFIRMED**

---

this argument before the Court of Federal Claims, it did not. "Because [the Government] failed to raise this argument below, we find it waived and decline to address it." *Ladd v. United States*, 713 F.3d 648, 655 (Fed. Cir. 2013) (citation omitted).